# FIELDS v. UNITED STATES.

EMBEZZLEMENT; INDICTMENT; BILL OF PARTICULARS; D. C. CODE, SEC. 841, 30 STAT. AT L. 1326, CHAP. 854, CONSTRUED; CONSTRUCTION OF STATUTES; DISCRETION OF TRIAL COURT; MOTION TO RETURN PAPERS TO FILES; CONTINUANCES; OWNERSHIP; CORPORATIONS, PROOF OF EXISTENCE; ESTOPPEL; BILL OF EXCEPTIONS; INSTRUCTIONS; RECEIVERS; PRESUMPTION OF INNOCENCE; REMARKS OF COUNSEL; SENTENCE AND PUNISHMENT.

1. An indictment which charges with precision and certainty that the defendant was appointed a receiver by order of court, that, by virtue of said appointment, he came into possession of a certain sum of money, and that on a certain date, in the District of Columbia, he unlawfully and fraudulently converted and appropriated the same to his own use, and did then and there embezzle the same, sets out with certainty all the necessary elements of the offense of embezzlement as described in D. C. Code, sec. 841 (30 Stat. at L. 1326, chap. 854).

2. In an indictment for embezzlement under sec. 841, D. C. Code (30 Stat. at L. 1326, chap. 854), alleging that the defendant unlawfully and fraudulently converted money to his own use, it is not necessary to allege the particular manner in which such conversion took place,. for the words "unlawfully and fraudulently converted" have a well-known signification, common as well as legal. (Following *Gassen-heimer* v. *United States*, 26 App. D. C. 432.)

3. Where an indictment is sufficiently certain in its terms, the question whether the district attorney shall be required to file a bill of particulars is a matter within the discretion of the trial court.

4. Sec. 841, D. C. Code (30 Stat. at L. 1326, chap. 854), describing embezzlement by a receiver as the fraudulent conversion to his own use of. property which "may come" into his possession by virtue of his employment, comprehends property in the hands of the receiver before the passage of the act, but embezzled thereafter.

5. Words like "may," "must," "shall," etc., are constantly used in statutes without intending that they shall be taken literally, and in their construction the object evidently designed to be reached limits and controls the literal import of the terms and phrases employed.

6. Statutes are to receive a sensible construction, such as will effect the legislative intent, and should be construed, if possible, so as to avoid or reject an absurd conclusion.

7. On an indictment for embezzlement, against a receiver, the action of the trial court in refusing to compel the district attorney to return to the clerk's office the papers in the equity cause in which the defendant was appointed receiver is not an abuse of discretion, where it appears that such papers are necessary to the preparation of the case for prosecution, that access to the same has never been denied to the defendant, and that the court announced that the defendant might examine any or all of them.

8. The action of the trial court upon an application for a continuance is purely a matter of discretion, and not subject to review, unless. it be clearly shown that such discretion has been abused.

9. On the trial of an indictment for embezzlement, against a receiver,. a motion for a continuance to procure the testimony of certain witnesses is properly refused, where it does not appear that the personal. appearance of the witnesses could not have been obtained, and where the only effect of their testimony would be to contradict the decree in pursuance of which the defendant was appointed receiver.

10. On the trial of an indictment against a receiver of an association for embezzlement of funds of the association, a motion for a continuance to procure the testimony of a witness is properly refused, where the supporting affidavit alleges that such witness would testify that a.

large part of the funds had come lawfully into the possession of defendant's coreceiver, and it appears that such funds were in the hands of the receivers jointly, and that no order of court had ever been made to pay them out.

11. *Semble*, that it is only in extreme cases that a court will continue a case indefinitely for the purpose of procuring evidence, even if such evidence is shown to be plainly competent and material.

12. On the trial of an indictment for embezzlement, against the receiver of a corporation, the ownership by the corporation of the funds alleged to have been embezzled is sufficiently proved where it is shown that such funds are the proceeds of real estate, and that such real estate was owned by the corporation, and vested in the defendant as receiver by an order of court.

13. Proof of the existence of a corporation may be made by the records of the register of deeds of the District of Columbia, or by evidence tending to show that the corporation was *de facto* organized and acting as such.

14. A corporation does not cease to exist through the discontinuance of its business, the failure to maintain its active organization, or by becoming hopelessly insolvent. (Following *Brown* v. *Delafield & B. Cement Co.* 1 App. D. C. 232, 236.)

15. A person appointed by order of court as receiver of a corporation cannot question the *de facto* status of such corporation.

16. An objection not appearing in the bill of exceptions will not be considered by the appellate court.

17. A refusal by the trial court to consider a number of prayers submitted altogether is of no consequence, where such prayers are afterwards submitted separately, and either given or refused.

18. Where a bill of exceptions contains no recital of the fact of the absence or presence of the jury, it is to be presumed that they were present.

19. While a bill of exceptions purporting to contain a recital of evidence, apparently full in regular order of sequence, may, under the particular circumstances of a case, be sometimes accepted as a complete statement, in substance, of all of the evidence, a bill of exceptions cannot be so taken, where it is apparent from the charge of the court that certain letters of the defendant were offered as tending to show an acknowledgment of guilt, and the same are not recited or mentioned in the bill of exceptions.

20. The real custody of property in the hands of a receiver is in the court of which he is a temporary officer by appointment. The receiver has no personal control of the money, and can only pay it out or invest it by the sanction of the court.

21. A defendant in a criminal prosecution is entitled to a charge upon the presumption of innocence; but it is proper to refuse to charge that "the law presumes the defendant to be an honest, upright man of integrity and good character, and the jury are bound to assume him to be such a man in the consideration of the evidence," where the defendant has offered no proof of good character.

22. Though invective by counsel is in bad taste, yet, if it is founded on the evidence in the case on trial, and relates to the final conclusion which that evidence tends to establish, its permission by the court does not amount to reversible error.

23. Where the court rebukes counsel for an improper remark, and orders him to withdraw it, and this is done, and no further action is asked of the court, the remark cannot be complained of on appeal. (Following *Lorenz* v. *United States,* 24 App. D. C. 337, 391.)

24. While D. C. Code, sec. 841 (30 Stat. at L. 1326, chap. 854), declares a forfeiture of a receiver's commissions and charges in cases of embezzlement of the funds in his possession, it is not a part of the punishment which the court, having jurisdiction of the offense, is authorized to impose, and it is properly omitted in entering the judgment upon the verdict and fixing the penalty. If effective, the question of the forfeiture is for the determination of the equity court having jurisdiction in the matter of the receivership when the accounts thereof come on for final settlement.

25. Under Rev. Stat. secs. 5539 and 5546 (U. S. Comp. Stat. 1901, pp. 3720, 3723), an imprisonment, if for more than one year, may be in a State penitentiary, and when so imprisoned the convicted person is subject to the same discipline and treatment as those sentenced by the State court.

26. Under D. C. Code, sec. 841 (30 Stat. at L. 1326, chap. 854), a sentence imposing imprisonment "at labor" is not warranted, and on appeal therefrom the judgment will be modified by striking out such words as "surplusage." (Following *Raymond* v. *United States,* 25 App. D. C. 555, 562, 26 App. D. C. 250.)

No. 1633.   Submitted March 7, 1906.   Decided May 1, 1906.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia sitting as a criminal court in a prosecution for embezzlement.

*Modified and affirmed.* .,

The facts are sufficiently stated in the opinion.

*Mr. Frank J. Hogan, Mr. John C. Gittings, Mr. Philip Walker,* and *Mr. Joseph C. Sheehy* for the appellant.

*Mr. James S. Easby-Smith,* Special Assistant United States Attorney, for the United States.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

An indictment presented April 3, 1905, charged Thomas M. Fields and another with embezzlement in eight counts. Some of these counts were held defective on demurrer, and a verdict of not guilty was directed on others, leaving the third count, on which Fields was found guilty, and from the judgment on which he has appealed.

The third count charges that, on November 23, 1903, in the District of Columbia, the said Fields and another were receivers under an order of the supreme court of the District entered November 6, 1894, in the case of the Washington Beneficial Endowment Association against the Commercial Alliance Life Insurance Company; that on said date the said receivers (naming them) had possession of a certain sum of money, to wit, the sum of $15,974.07, of the said value, etc., "being the property and moneys of the Washington Beneficial Endowment Association, a body corporate," which had come into their possession by virtue of their office and employment as such receivers, and that they so having the same in their possession on November 23, 1903, in the District aforesaid, "and while they were such receivers as aforesaid, did unlawfully and fraudulently convert and appropriate the same to their own use, and did thereby and then embezzle the same," etc.

Fields was tried alone, and, after motions in arrest of judgment and for new trial had been overruled, was sentenced to be imprisoned in the penitentiary and kept at labor for the term of five years.

Fifty-seven errors in the proceedings on the trial have been assigned.

It would consume space unnecessarily to discuss these seria-

tim, as they may be condensed into certain propositions on which the appellant relies.

1. The first proposition relates to the sufficiency of the indictment on objections raised by demurrer and in arrest of judgment.

The indictment is founded on section 841 of the District Code (30 Stat. at L. 1326, chap. 854), which reads as follows: "Any executor, administrator, guardian, trustee, receiver, collector, or other officer into whose possession money, securities, or other property, of the property or estate of any other person may come by virtue of his office or employment, who shall fraudulently convert or appropriate the same to his own use, shall forfeit all right or claim to any commissions, costs, and charges thereon, and shall be deemed guilty of embezzlement of the entire amount or value of the money or other property so coming into his possession and converted or appropriated to his own use, and shall be punished by a fine not exceeding $1,000, or by imprisonment not exceeding ten years, or both."

(1) We are of the opinion that in respect of form the indictment is sufficient. It charges with precision and certainty that the defendant was appointed a receiver by order of court; that by virtue of said appointment he came into possession of a certain sum of money, alleged to be the property of the Washington Beneficial Association, and that on a certain date, in the District of Columbia, he unlawfully and fraudulently converted and appropriated the same to his own use, and did then and there embezzle the same. This sets out all the necessary elements of the offense as defined in the section aforesaid without any uncertainty or ambiguity. *Evans* v. *United States*, 153 U. S. 584, 587, 38 L. ed. 830, 831, 14 Sup. Ct. Rep. 934; *Potter* v. *United States*, 155 U. S. 438, 445, 39 L. ed. 214, 217, 15 Sup. Ct. Rep. 144; *Knoll* v. *United States*, 26 App. D. C. 457; *Moore* v. *United States*, 160 U. S. 268, 40 L. ed. 422, 16 Sup. Ct. Rep. 294. In the case last cited an indictment was held defective because it did not allege that the money embezzled came into the hands of the defendant in his capacity as an employee. In other respects the indictment, which, like this, followed the language of the statute, was upheld. That

defect does not appear in the present indictment, as it alleges the appointment as receiver and that the money came into the possession of the defendant in that capacity. The allegation of the order of appointment as receiver was sufficiently alleged to warrant its admission in evidence, and that is all that the rules of pleading require.

(2) Nor was it necessary to allege the particular manner in which the defendant unlawfully and fraudulently converted the money and appropriated the same to his own use. These words have a well-known signification, common as well as legal, and are of common use in indictments for larceny and embezzlement. *Gassenheimer* v. *United States,* 26 App. D. C. 432; *Moore* v. *United States,* 160 U. S. 268, 271, 40 L. ed. 422, 424, 16 Sup. Ct. Rep. 294; *Grin* v. *Shine,* 187 U. S. 186, 189, 47 L. ed. 134, 135, 23 Sup. Ct. Rep. 98.

2. The indictment being sufficiently certain in its terms, the question whether the district attorney should be required to file a bill of particulars was a matter within the discretion of the trial court; and there is nothing to indicate the slightest abuse of that discretion.

3. The question of vital importance in the case, and which has been argued with great force and earnestness, arises on the construction of section 841 (30 Stat. at L. 1326, chap. 854), and is presented on demurrer to the indictment, on instructions prayed, as well as on the motion in arrest.

The fact which may be inferred from the indictment is made certain by the evidence, namely, that the money came into the possession of the receivers prior to the enactment of the Code, although it was embezzled thereafter. The contention is that by the plain language of the section it is not intended to apply to money or other property thereafter embezzled, unless the same had come into the possession of the receiver after the date that it went into effect. The words used are, "into whose possession money   *   *   *   *may come* by virtue of his office," etc. It is argued that the words "may come" are synonymous with "shall come," and can have no application to anything in the past, but solely to the future.

Considering the whole section, and other related sections de-

fining particular species of embezzlement, we are not prepared
to accept this conclusion as to the plain meaning of the phrase
used.  Words like may, must, shall, and so forth, are con-
stantly used in statutes without intending that they shall be
taken literally, and in their construction the object evidently
designed to be reached limits and controls the literal import of
the terms and phrases employed.  The chapter of which this
section forms a part undertakes to define and punish every
species of embezzlement.  One relates to every person who,
"being chargeable with the collection, safe-keeping," etc., of
money or other property, fraudulently converts to his own use
the same so "received, controlled, or held by him," etc. (Sec-
tion 833 [30 Stat. at L. 1325, chap. 854].)  Another applies
specially to agents, attorneys, clerks, or servants who shall
convert to their own use anything of value which "shall come"
into their possession, etc. (Section 834 [30 Stat. at L. 1325,
chap. 854].)  Section 837 (30 Stat. at L. 1325, chap. 854)
covers the case of "any person intrusted with anything of value
to be carried for hire, or being an innkeeper and intrusted by
his guest, etc."  Section 838 (30 Stat. at L. 1325, chap. 854)
governs the case of any warehouseman, factor, and so forth,
who sells, disposes of, or applies or converts to his own use any
property "intrusted or consigned," etc.  The general purpose
of these sections, as we have seen, is to define and punish em-
bezzlement in the various ways, and by the various persons who
may commit the offense, and, though different forms of ex-
pressions are used, their general signification is practically the
same.  The act of embezzlement is the thing to which each
section is specially directed; and while, as to that, it is neces-
sarily prospective in its operation, it does not follow that it
was intended, also, that there should be no punishment for the
embezzlement of money or property, except such as might
thereafter come into the possession of the party charged with
a duty in respect thereof.  It is inconceivable that Congress
intended to make a distinction in respect of property thereafter
embezzled, dependent upon the time when the same shall have
come into the possession of the embezzler.  There is no pos-
sible foundation in law or morals for such a distinction, and,

unless compelled by an unmistakable expression of such an intention, no court would be justified in adopting a construction that would give it recognition. "Nothing is better settled than that statutes are to receive a sensible construction, such as will effect the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Lau Ow Bew* v. *United States,* 144 U. S. 47, 59, 36 L. ed. 340, 344, 12 Sup. Ct. Rep. 517.

With one exception, none of the multitude of cases cited in appellant's brief covers the particular phase of statutory construction here presented. All are distinguishable, and it is unnecessary to consume space by their separate review. The exception referred to is the decision of an inferior court of another jurisdiction, unofficially reported.*

We are of the opinion that the learned trial justice did not err in holding that section 841 comprehends property that may have passed into the defendant's possession as receiver before the time that it went into effect, when embezzled thereafter.

4. After his demurrer to the indictment had been overruled, the defendant, on May 4, 1905, filed a motion, supported by affidavit, for an order compelling the district attorney to return to the office of the clerk all of the original papers and records in equity cause No. 15,907, which is the one in which defendant was appointed as receiver, and which contained all the proceedings relating thereto. It appeared from the sworn reply of the district attorney to said motion that the papers referred to filled a large basket, and had been obtained from the clerk of the supreme court of the District because they were needed in preparing the case for the prosecution, as well as to preserve the same, because some of the files had been secretly taken from said office, and that access thereto had never been denied to the defendant or his attorneys, but, on the contrary, they had been afforded facilities for examining the same. In overruling the motion the court announced that, if defendant would specify the particular papers needed by him, the same would be ordered into his possession for copy, or he might examine the whole of them if desired. It nowhere appears that the de-

*State* v. *Mannix,* (1886) 16 Ohio L. J. 212.—Reporter.

fendant suffered any detriment by the denial of his motion. We are of the opinion that the action of the court was in the discretion necessarily committed to it in such matters, and, in the absence of any indication of abuse, is not matter of review.

5. On May 8, 1905, the day set for the trial of the case, the defendant filed a motion for continuance to procure the testimony of three witnesses, two of whom resided in New York city, and one was then somewhere in Europe, where he expected to remain for two years. The supporting affidavit alleged that on May 3, 1905, defendant filed an affidavit and motion for an order for a commission and letters rogatory to take the testimony of said witnesses, which was granted. One of the New York witnesses, William T. Gilbert, had been the receiver of the Commercial Alliance Insurance Company (one of the parties to the equity suit No. 15,907) and the other, Hotchkiss, had been his attorney. By these, it was alleged, he expected to prove that neither of the corporations recited as owners of the money intrusted to him as receiver was the owner of the same, and thereby to overcome the proof of the government as to the ownership alleged.

By Miller, it is alleged, he expected to prove that a certain large part of the money had passed lawfully into the possession of defendant's coreceiver (also indicted with him), for the sole purpose of bona fide investment in certain safe securities, and that the same never came into the exclusive possession or control of affiant; and that he did not convert the same, or any part thereof, to his own use: "This proof to supplement other evidence proposed to be offered as to the lawful disposition of all of the moneys mentioned in the indictment, as far as this defendant is concerned." And further, that said Miller is the only witness to corroborate this defendant as to the said part of the said moneys. It was further alleged, that he expected to prove by all three witnesses that about eleven years ago the Washington Beneficial Endowment Association, named in the third count, sold and by deed conveyed away absolutely all of whatever right, title, and interest it ever had in the moneys and property mentioned in the indictment, etc.

It has been expressly declared by the Supreme Court of the

United States: "That the action of the trial court upon an application for a continuance is purely a matter of discretion, and not subject to review by this court, unless it be clearly shown that such discretion has been abused, is settled by too many authorities to be now open to question." *Isaacs* v. *United States,* 159 U. S. 487, 489, 40 L. ed. 229, 230, 16 Sup. Ct. Rep. 51. We perceive no abuse of that discretion in this case. Passing by the questions of the right to take the depositions of witnesses in a criminal case, it does not appear that the personal appearance of the New York witnesses could not have been obtained upon application for the proper process for that purpose. However this may be, their proposed testimony, as regards the ownership of the fund by the Washington Beneficial Endowment Association—the owner alleged in the third count—would have been incompetent. That association had attempted to sell its property, from the sale of which the money in the hands of the receivers had been realized; but that sale had been annulled as fraudulent by decree of the equity court which appointed the receivers to take possession of the proceeds. Their testimony could add nothing to the fact that such sale had been made, and they could not have been permitted to contradict the decree by which it had been annulled.

As to the witness Miller, his location was uncertain, and there was nothing to show a reasonable probability that his evidence could be procured within any definite period if at all. Moreover, the particular facts that he was expected to testify to were not stated. The general statement that he would testify that a large and specific sum of the moneys had passed lawfully into the hands of defendant's coreceiver for the sole purpose of bona fide investment does not show a good defense. The funds were in the possession of the receivers jointly, subject to the control and disposition of the court. They had no authority to pay them out or to invest them in securities of any kind save upon order of the court, and it is not pretended that such an order was made. Nor could one of them draw the money from the bank of deposit without the other's signature. It would be an extreme case that would require a court to con-

tinue a case indefinitely for the purpose of procuring evidence, even if shown to be plainly competent and material.

6. The next proposition, founded on errors assigned, relates to the ownership of the money which was alleged in the third count to be in the Washington Beneficial Endowment Association, and to the proof of the corporate existence of the same.

(1) The records of the equity case were introduced with orders therein rendered, showing that the real estate conveyed by the endowment association to the Commercial Alliance Insurance Company had been seized and put in the hands of receivers, who were attorneys representing certain of the parties therein.    That the conveyance had been annulled and the property converted into money which passed into the hands of the receivers.    The litigation began in 1894, and its history is to be found in *Gilbert* v. *Washington Beneficial Endowment Asso.* 10 App. D. C. 316 and 21 App. D. C. 344.

Pending the litigation concerning the rights of various creditors and members or beneficiaries of the endowment association in the distribution of its assets, the money remained in the hands of the receivers, and reports signed by defendant and his coreceiver showed that the amount charged in the indictment was in their possession by virtue of their appointment and acceptance of the trust.    The money into which the land and other assets had been converted took their place, and the receivers became responsible therefor.

The conveyance of the property having been annulled, the legal ownership of the same and its proceeds remained in the endowment association until a distribution thereof among its creditors and beneficiaries could be determined and carried into effect.    That the fund may have been finally ordered to be distributed, after the alleged date of its appropriation by the receivers to their own use, or that it may hereafter be, upon final settlement of the litigation, can have no effect upon that ownership, which was then in the endowment association for all the purposes of this case.

(2) Under the allegations of the indictment, it was necessary to prove that the Washington Beneficial Endowment Association, the alleged owner of the fund, was a body corporate.

This proof was attempted to be made in two ways: First, by evidence tending to show actual incorporation in April, 1877, through proof thereof from the records of the register of deeds for the District of Columbia, and, second, by reputation. There were some irregularities in the proof of the articles of incorporation, and, as it would require considerable space, we refrain from its discussion. Proof could either be made in that way or by other evidence tending to show that the corporation was *de facto* organized and acting as such. *United States* v. *Amedy,* 11 Wheat. 392, 409, 6 L. ed. 502, 506. Of this there was ample evidence through several persons who had participated in the original organization of the corporation, or had had stock in the same. It was shown to have been actually engaged in business from 1877 to 1894, at which time, being insolvent, it undertook to sell its property, real and personal, to the Commercial Alliance Insurance Company, and ceased to do business. It was sued and described as a corporation in the equity suit in which the defendant was appointed a receiver. No matter that it ceased to do business in 1894, and remained thereafter insolvent; it was and still is a corporation for all the purposes of the equity suit and of this case. It is well settled that a corporation does not cease to exist through the discontinuance of its business, merely, though ceasing to maintain its active organization, or by becoming hopelessly insolvent. *Brown* v. *Delafield & B. Cement Co.* 1 App. D. C. 232, 236. It may be remarked, also, that the defendant, who held the money by appointment as receiver in the equity suit which recognized the corporation as one *de facto,* at least, and under a decree declaring its ownership of that money for the purposes of the suit, is in no attitude to deny its *de facto* status.

7. Several assignments of error relate to exceptions taken to the introduction of certain papers, reports, and orders entered in the equity case. These were identified generally as being parts of the said record, and the orders read were those that had been signed by the presiding justice, and which are thereafter customarily copied in the minutes of the court. The objections were in general that these related to money in pos-

session before the Code, and showed, also, that the property originally ordered into the possession of the receivers was real estate, though they showed, also, that the land had been converted into money and that money delivered to the receivers. Both of these questions have been heretofore disposed of.

It is now urged that the orders as entered in the minutes were the best evidence of the same, and that those found in the papers were not therefore admissible. The answer to this is, that no such objection appears in the bill of exceptions, and comes too late. Had it been made at the time, the prosecution, being put upon notice, might have waived the objection by reading the orders from the minutes. The several receivers' reports showing their account and the possession of the balance charged in the indictment were not only shown to be papers belonging to the record of the equity suit, but defendant's signature thereto was proved also. The substantial objection to these, also, was that they showed the possession of the money prior to the enactment of section 841 of the Code (30 Stat. at L. p. 1346, chap. 854).

8. Many points made on the refusal of instructions prayed by the defendant, and on exceptions taken to the charge of the court, have been completely covered in the foregoing portions of this opinion, and such as remain open may be considered under one head.

(1) The exception taken to the refusal of the court to consider the twenty-seven prayers of the defendant submitted altogether is of no consequence, because each of these was thereafter submitted separately, and either given or refused. The remarks of the court upon the practice of sending up a series of written instructions joined together may have been unnecessarily severe upon counsel, for it is not always practicable to make a bill of exceptions reflect all of the surrounding conditions of a particular event in a long and hotly contested trial; but we find nothing therein calculated to influence the jury against the defendant. It is said, on behalf of the prosecution, that the jury were not in fact present when the foregoing occurred. The bill of exceptions containing no recital of the fact.

of the presence or absence of the jury, it is to be presumed that they were present.

(2) The majority of these prayers when offered separately were granted. Some were founded on defendant's contention in respect of section 841, while others related to other counts of the indictment,—all of which related to the same act of embezzlement, but charged a different ownership than that of the third count,—on which the jury were directed to return verdicts of not guilty.

(3) On a refused prayer to find the defendant not guilty on the third count, the sufficiency of the evidence of the fraudulent conversion of the money is assailed. The bill of exceptions does not recite that it contains all of the evidence offered on behalf of the government, though at the close of that offered for the defendant it recites: "The foregoing is the substance of all of the evidence offered by the defendant. The government then announced that it had no further evidence to offer." While a bill of exceptions purporting to contain a recital of evidence, apparently full in regular order of sequence, may, under the particular circumstances of a case, be sometimes accepted as a complete statement, in substance, of all of the evidence, this one cannot be so taken, because it is apparent from the charge of the court that certain letters of the defendant were offered as tending to show an acknowledgment of guilt, and the same are not recited or mentioned in the bill of exceptions. Taking the evidence as recited, however, we think it sufficient to support the verdict. It showed that the money was in the possession of the receivers; that it had been deposited in a trust company by sanction of the court to await the result of the reference to the auditor, and appeals that were taken in which the execution of the decrees of the trial court were superseded; that it was removed into other banks, without an order to that effect, and deposited in the names of the two receivers as individuals; that it was withdrawn through a series of checks cashed at the counter generally by the defendant; that when the final order of the tribunal was made there was nothing paid to the parties declared entitled to the same; that pending in-

quiry the defendant absconded, and, when arrested at some point in New York, was passing under the name of Dr. Brown. Moreover, a witness introduced by the defendant testified that upon one occasion the defendant went into the bank and drew a sum of money, and then inclosed a $1,000 bill in an envelope which he subsequently delivered furtively to his coreceiver. This evidence was offered upon the theory that it tended to show a lawful disposition of the money, because his fellow receiver was jointly entitled to the possession.

We do not so understand the powers, duties, and obligations of a receiver. The real custody of the property is in the court, of which he is a temporary officer by appointment. He has no personal control of the money, and can only pay it out or invest it by the sanction of the court. From the facts, as related by the witness aforesaid, there being no single circumstance tending to show that it was a mere irregularity without intent to do wrong, the jury might well have considered the act, to that extent, not only a wrongful, but also a fraudulent, conversion of so much of the fund.

(4) Among the refused prayers of the defendant is the following: "The law presumes the defendant to be an upright, honest man of integrity and good character, and they are bound to assume him to be such a man in the consideration of the evidence." The defendant offered no evidence of good character. Assuming that he was entitled to demand an instruction that good character is to be presumed, even when no issue is made thereon, the one offered went much farther than that, for it requires, in addition, that he shall be presumed to be "an upright, honest man of integrity" also, throughout the consideration of the evidence. If such an instruction is required to be given when demanded, there would be no occasion to introduce evidence of good character in any case. We are of the opinion, however, that the court is not required to give an instruction on anything that has not been put in issue. All that the defendant was entitled to was a charge upon the presumption of innocence, and the necessity of the government to overcome that presumption by proof of guilt beyond a reasonable doubt. Such an instruction was given at the request of the defendant and

repeated in the general charge. *State* v. *Anslinger,* 171 Mo.
600, 606, 71 S. W. 1041; *State* v. *Gartrell,* 171 Mo. 489, 515,
71 S. W. 1045; *Williams* v. *People,* 166 Ill. 132, 136, 46
N. E. 749.

The authorities relied on by the defendant do not go so far
as to hold that the accused is entitled to such a charge as was
asked, under all circumstances. *McKnight* v. *United States,*
38 C. C. A. 115, 97 Fed. 210; *Mullen* v. *United States,* 46 C.
C. A. 22, 106 Fed. 892. In the first of those cases the judg-
ment was reversed because the court permitted the district at-
torney, over the objection of the defendant, to comment upon
his failure to prove a good character: and in the second, the
court, in refusing the instruction, made remarks decidedly preju-
dicial to the defendant, respecting his failure to offer similar
proof.

(5) The court, in the general charge, laid down the law
applicable to the offense alleged in the third count, and the
evidence that had been submitted.

9. We come now to the consideration of errors assigned
upon exceptions taken to certain remarks made in the argu-
ment of counsel representing the government.

These contain much invective against the defendant. In
commenting upon the case made against him, he was denounced
as a common thief, and as one who had robbed the widow and
orphan (who were among those claiming participation in the
final distribution of the fund as preferred creditors of the en-
dowment association).

Though, unfortunately, not uncommon in the course of the
trial of closely contested cases, invective is always in bad taste.
Where, however, it is founded on the evidence in the case on
trial, and relates to the final conclusion which that evidence
tends to establish, its permission by the court does not amount
to reversible error. *State* v. *Gartrell, supra.* The case cited
is well considered, and the very point here made is ably dis-
cussed and, we think, properly decided. When the counsel
went outside the case to say that "the defendant did not even
try to prove a good reputation," the court promptly intervened,
saying that he did not have to, and that the remark should be

withdrawn.    Counsel then immediately withdrew the remark. No further action was asked of the court, and this is all that he could well have done under the circumstances.  *Lorenz* v. *United States,* 24 App. D. C. 337, 391; *Yeager* v. *United States,* 16 App. D. C. 356, 362.

10. The last point for consideration arises on the recitals of the judgment imposing the sentence.   This sentenced the defendant to the penitentiary "there to be imprisoned and kept at labor for the period of five years."   No forfeiture of the defendant's right or claim to his commissions, costs, and charges as receiver was added to the sentence.

(1) While section 841 declares a forfeiture of a receiver's commissions and charges in cases of embezzlement of the funds in his possession, it is not a part of the punishment which the court, having jurisdiction of the offense, is authorized to impose; and it was properly omitted in entering the judgment upon the verdict, and fixing the penalty.   If effective, the question of the forfeiture is for the determination of the equity court having jurisdiction in the matter of the receivership when the accounts thereof come on for final settlement.

(2) Part of the penalty imposed by section 841 is imprisonment not exceeding ten years, without the addition of the words "at hard labor," as is the case in some other sections defining and punishing offenses.   When those words are used it is proper for the sentence to so read.   But where not used, the imprisonment, if for more than one year, may be in a State penitentiary regularly designated for the purpose.   Rev. Stat. sec. 5546, U. S. Comp. Stat. 1901, p. 3723.   And when sentenced to be imprisoned in such a penitentiary the convicted person is subject to the same discipline and treatment as is provided for those sentenced by the courts of the State or Territory in which it may be situated.   Rev. Stat. sec. 5539, U. S. Comp. Stat. 1901, p. 3720; *Ex parte Karstendick,* 93 U. S. 396, 399, 23 L. ed. 889, 890; *Re Mills,* 135 U. S. 263, 266, 34 L. ed. 107, 108, 10 Sup. Ct. Rep. 762.

Whether hard labor constitutes part of the treatment and discipline of the penitentiary in which the appellant has been

sentenced to be confined for five years, we need not undertake to inquire, though doubtless such is the fact. The words "at labor," included in this sentence, were unwarranted as well as unnecessary; but it does not follow that the judgment must, on appeal therefrom, be declared void, or reversed with direction to grant a new trial. *Raymond* v. *United States,* 25 App. D. C. 555, 562, 26 App. D. C. 250.

Having the power to modify, as well as reverse, a judgment appealed from the supreme court of the District, we shall, without further consideration of the point, modify the judgment and sentence so as to strike therefrom the words "at labor" as being, at least, mere matter of surplusage.

Having found no reversible error in the proceedings on the trial, the judgment will be modified as above indicated, and as modified will be affirmed.           *Modified and affirmed.*

A motion for a rehearing was overruled June 7, 1906.

A petition for a writ of error to the Supreme Court of the United States was denied June 13, 1906.