**BORD et al. v. UNITED STATES.**
Nos. 8078, 8079.

United States Court of Appeals for the
District of Columbia.

Argued May 15, 1942.

Decided Aug. 6, 1942.

Mr. Irvin Goldstein, of Washington, D.
C., for appellant.

Messrs. William Hitz and Charles B.
Murray, Assistant United States Attorneys,

both of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before STEPHENS, VINSON, and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

These appeals are from convictions of housebreaking and larceny. On the night of December 29–30, 1940, the Savoy Theater and the adjoining Savoy Flower Shop were entered. More than fifty dollars in money, and other property, were stolen from the theater. Twenty dollars in money was stolen from the flower shop. One indictment in two counts charged appellant with entering and stealing from the theater; another, also in two counts, charged him with entering and stealing from the flower shop.[1] By consent, the two indictments were tried together. Appellant was convicted on all four counts.

■ The first indictment charged appellant with entering "the building of the Stanley Company of America, a body corporate, said building being known as the Savoy Theater." Appellant says there was no proof either that the named Company was incorporated or that it occupied the theater. Yet an assistant manager of the theater, and also a representative of Warner Brothers, testified to both points; the Warner representative identified an imprint of the corporate seal; and it was shown that the Stanley Company of America, a Delaware corporation, paid taxes on the theater building. The corporate character of the owner or occupant of property stolen or entered may be proved by "reputation", i. e., by "evidence tending to show that the corporation was de facto organized and acting as such."[2] We do not suggest that failure to prove the identity and corporate character of the occupant would have called for reversal. "The purpose of the law in requiring the name of the person who occupied and used the building entered to be stated is to negative the defendant's right to break and enter, and to protect him from a second prosecution for the same offense."[3] Whoever occupied the Savoy theater, it is obvious that appellant had no right to break and enter it or to remove property from it, and it was sufficiently identified so that he cannot again be prosecuted for these offenses.

■ There was ample evidence that he was one of the men who entered the theater and committed larceny there. This included his voluntary admissions, express or implied. He said to witnesses, among other things, that he worked for two hours under a torch on the night in question; that he could tell a lot if he wanted to; that he had a hard time getting into the place; and that he got a bag of silver out of a candy or pin-ball machine there. These admissions were corroborated by circumstantial evidence. Shortly after the crime appellant had money-bags, and a watch, which were taken from the safe in the theater. He also had a considerable amount of cash, much of it in change.

■■ Both the theater and the flower shop were entered by climbing over a low building behind the shop and breaking side doors of the buildings. Nothing but money, and that without earmark, was taken from the shop. The court told the jury that if they found appellant guilty of entering and stealing from the theater they might (but need not) draw the inference that it was he who entered and stole from the flower shop. Appellant complains of this instruction, but it was clearly right. Since similar crimes were committed on the same night, in adjoining buildings entered from the same secluded spot, it may well be thought clear beyond a reasonable doubt that the same person or group was involved. It is as reasonable to infer that the men who stole from the theater also stole from the shop as it would be to infer, if a watch and a purse had been stolen in one night from two drawers of one secluded desk, that the man who took the watch took the purse.

■ The crimes were obviously the work of several men with elaborate apparatus. The prosecutor called one Garrett, who identified an acetylene tank, an oxygen tank, a torch, and bolt cutters, as such. But Garrett then relied on his privilege and refused to connect himself or appellant with the crimes. The court

---

[1] Cf. D.C.Code (1940) §§ 22—2201, 22—2202, 22—1801.

[2] Fields v. United States, 27 App.D.C. 433, 445. Cf. Bimbo v. United States, 65 App.D.C. 246, 249, 82 F.2d 852.

[3] Cady v. United States, 54 App.D.C. 10, 13, 293 F. 829, 832. Cf. Bimbo v. United States, supra.

thereupon instructed the jury to disregard his testimony, and also to disregard the tools which he identified. Appellant charges that the prosecutor knew that Garrett would not testify, and urges that calling Garrett therefore deprived appellant of a fair trial. The charge is unfounded. The record supports the government's theory that, while Garrett had made conflicting statements as to whether or not he would testify, the prosecutor reasonably believed that he would.

■ After the jury had been out several hours the court recalled them and gave the "Allen charge."[4] The court said among other things that "a juror should ask himself whether his view is reasonable or unreasonable; he should not be bull-headed, he should not be stubborn"; if he finds himself in a small minority he should ask himself "Would I be shocking my conscience or reason if I yielded?" Fifty minutes after this charge was given, the jury brought in its verdict. Appellant urges that the words "bullheaded" and "stubborn" tended to coerce the jury. But immediately after using those words the court said: "If, on the other hand, he does have an abiding conviction one way or the other it is not his duty to surrender to a majority the other way." The charge ended with a cordial expression of appreciation to the jury. Though the language to which appellant objects is strong, we think the context prevented it from being coercive. Moreover, counsel who represented appellant at the trial did not object to it. The point is raised by his present counsel, who was assigned by the court to conduct his appeals and has diligently protected his interests.

Affirmed.

STEPHENS, Associate Justice.

The first count of the indictment in case No. 8078 charged that the defendant entered "the building of the Stanley Company of America, a body corporate, said building being known as the Savoy Theatre." A motion for a directed verdict in respect of this count was made upon the ground of failure of the Government to prove the identity and character of the Stanley Company of America as a corporation.

It is by substantial authority held that in prosecutions for offenses in which the ownership of property is material it is necessary to allege that the owner of the property, if not a natural person, is a corporation or otherwise a legal entity capable of owning property, and if it is a corporation, the facts of incorporation. People v. Cohen, 1933, 352 Ill. 380, 185 N.E. 608, 88 A.L.R. 481; State v. Barrett, 1925, 148 Md. 153, 128 A. 744; Phelps v. State, 1923, 25 Ariz. 495, 219 P. 589; Green v. State, 1917, 82 Tex.Cr.R. 420, 199 S.W. 622; State v. Glaze, 1916, 177 Iowa 457, 159 N.W. 260; Hampton v. State, 1911, 99 Miss. 176, 54 So. 722; State v. Patterson, 1900, 159 Mo. 98, 59 S.W. 1104; see Gibbs v. State, 1930, 37 Ariz. 273, 293 P. 976, 977, 74 A.L.R. 1105; Note (1934) 88 A.L.R. 485; 27 Am.Jur., Indictments and Informations § 89. Essential allegations must of course be proved. The rule requiring allegation and proof of corporate capacity has been impliedly recognized in this jurisdiction. Fields v. United States, 1906, 27 App.D.C. 433; Bimbo v. United States, 1936, 65 App.D.C. 246, 82 F.2d 852.

I think the proof of the fact of incorporation of the Stanley Company failed. This fact could have been shown, within the two cases just cited, by the testimony of persons who of their own knowledge knew the Stanley Company to be a corporation, or by the testimony of persons who knew its reputation and that it was reputed to be a corporation. Witnesses called for the Government testified that the Stanley Company was a corporation but none of them, in my opinion, disclosed any basis in personal knowledge for their statements. There was not testimony that the Stanley Company was reputed to be a corporation. The Government contended that the Company was a corporation of Delaware. If that was true its corporate existence could easily have been shown by an authenticated copy of the articles, which must have been readily obtainable at Dover.

I think we cannot properly relieve the Government from its duty of proof in this aspect of the case. Hence I think there should be reversal of the conviction on the first count of case No. 8078.

I agree with the affirmance otherwise.

---

[4] Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528.