Perry E. DOUGLAS, Appellant,

v.

UNITED STATES, Appellee.

Anthony J. SANDERS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 85–118, 85–352.

District of Columbia Court of Appeals.

Submitted Sept. 19, 1989.
Decided Feb. 23, 1990.

John K. Lunsford, Washington, D.C., appointed by this court, was on the brief, for appellant Douglas.

Diane S. Lepley, Washington, D.C., appointed by this court, was on the brief, for appellant Sanders.

Jay B. Stephens, U.S. Atty., Michael W. Farrell and Robert M. Morgan, Asst. U.S. Attys. at the time the brief was filed, and Helen M. Bollwerk and Erik P. Christian, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and REILLY, Senior Judge.

TERRY, Associate Judge:

Appellants were convicted of attempted second-degree burglary, in violation of D.C. Code §§ 22–103 and 22–1801(b) (1989).[1] On appeal they contend that the government failed to prove who owned the retail store that was the subject of the attempted burglary, and also failed to prove that they had a specific intent to steal. We reject both arguments and affirm the convictions.[2]

I

At approximately 3:30 a.m. on August 22, 1984, a silent burglar alarm was triggered at the Standard Drug Store at 914 F Street, Northwest. The alarm company sent one of its investigators, Alfred Johnson, to the scene. At the same time, Metropolitan Police Officer Elysia Branson, who had heard a radio broadcast about the burglar alarm, parked her van about a block away and began to survey the area.[3] Aided by a pair of high-powered binoculars, Branson saw five men standing in a huddle in front of Central City Discount, a stereo store located next to Standard at 916 F Street. They appeared to be passing a metal object back and forth and pulling at the security grate in front of the stereo store. Officer Branson identified the four defendants in court as four of the five men whom she saw in front of 916 F Street and later helped to arrest.

Branson radioed her supervisor, Sergeant John Hickey, who was only a few blocks away, and told him what she had seen and heard. Hickey replied that he would come and investigate, and in a few minutes he arrived at Ninth and F Streets in an unmarked police car. By that time, however, the five men had begun to move away from Central City Discount, so Hickey and his partner, Officer Rudolph Goddard, drove around the block in an effort to find them. After circling the area for sev-

eral minutes, Hickey spotted five men walking north on Eleventh Street toward F Street. He drove past them, then parked his car at Eleventh and F Streets and began to watch them through binoculars as they headed back toward the stereo store.

Meanwhile Mr. Johnson, the man from the burglar alarm company, was completing his investigation. He found that a telephone line in the alley behind the Standard Drug Store had been cut, thereby setting off the alarm. Johnson testified that as he was putting his tools into his car, he was approached by four or five men who began to ask him questions. He could not recall the content of his conversation with these men, however, and he did not identify any of them in court. Sergeant Hickey, from his observation point, saw the five men approach Johnson. He could see them clearly because the entire area in front of the store was illuminated by high-intensity street lights. Hickey testified that these were the same five men that he saw walking on Eleventh Street and identified four of them as the defendants in this case.

After Johnson left, the five men lingered at the corner of Ninth and F Streets for about fifteen minutes before heading into an alley adjacent to the stereo store. With his binoculars Hickey watched as each of them entered the alley. Four of the five men were then out of Hickey's view, but one stayed near the mouth of the alley and kept looking back and forth, periodically stepping out toward the sidewalk. Shortly after 5:00 a.m. they all came out of the alley and walked to the front of the stereo store. One of the men then separated from the others, walked east on F Street toward Ninth Street, and disappeared.

Suddenly Sergeant Hickey heard the sound of glass breaking, followed by the ringing of an alarm. Officer Branson also heard the alarm go off and saw the four

---

**1.** The jury acquitted both appellants of destruction of property, with which they were also charged.

**2.** Two co-defendants, Jeff Louallen and Donnell Davis, were also charged, tried, and convicted along with appellants. Louallen did not note an appeal, however, and Davis' appeal from his conviction was dismissed.

**3.** From where she was parked, Officer Branson had a direct view of the entire 900 block of F Street.

men walking rapidly toward her.[4]  Two of them headed north on Ninth Street and were arrested by Officer Branson, while Sergeant Hickey arrested the other two, who continued eastward on F Street.  At no time did any of the four attempt to run away or resist arrest.  However, appellant Douglas, who was wearing a knapsack, threw the knapsack over a nearby fence before being apprehended.

Officer William Carter, a crime scene examiner, recovered the knapsack, which contained a pipe wrench, a flashlight, a pair of channel lock pliers, a large screwdriver with a broken tip, a set of keys, and other items.  Officer Carter also noticed that the glass was broken in the front window of the stereo store at 916 F Street, and he found a pair of wire cutters on the loading platform in the rear of an office building at 918 F Street.

All told, the government presented five witnesses, but they did not include the owner of either the Standard Drug Store or Central City Discount.  The defense offered no evidence.

## II

■  Both of appellants' arguments are challenges to the sufficiency of the evidence supporting their convictions.  In reviewing such challenges, the court must examine all the evidence, both direct and circumstantial, in the light most favorable to the government, mindful of the jury's right to weigh the evidence and assess credibility.  *E.g., United States v. Hubbard,* 429 A.2d 1334, 1337–1338 (D.C.) (citing cases), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981); *Byrd v.*

*United States,* 388 A.2d 1225, 1229 (D.C. 1978) (citing cases).  "It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury."  *Williams v. United States,* 357 A.2d 865, 867 (D.C.1976) (citations omitted).  With these precepts in mind, we turn to appellants' contentions.

### A.  *Ownership of the burglarized premises*

We are first asked to determine whether the evidence was sufficient to prove ownership of the stereo store which was the object of the attempted burglary.  That is, we must decide whether the evidence presented to the jury would allow a reasonable person to conclude beyond a reasonable doubt that the stereo store was the property of someone other than these appellants.

■  In a prosecution for burglary or attempted burglary in the District of Columbia, the government must prove that the building or other premises involved were the property of another.  While such proof is not explicitly mandated by our burglary statute,[5] the case law requires it in order to "negative the defendant's right to break and enter, and to protect him from a second prosecution for the same offense."  *Cady v. United States,* 54 App. D.C. 10, 13, 293 F. 829, 832 (1923); *accord, Bord v. United States,* 76 U.S.App.D.C. 205, 206, 133 F.2d 313, 314, *cert. denied,* 317 U.S. 671, 63 S.Ct. 77, 87 L.Ed. 539 (1942).  Appellants contend that because the government failed to prove, or even to allege,[6] the

---

**4.**  Branson had resumed her observation post in the 800 block of F Street, about 100 yards away from the stereo store.

**5.**  D.C.Code § 22–1801(b) (1989) defines second-degree burglary:

Except as provided in subsection (a) of this section [which defines first-degree burglary], whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building or any apartment or room, whether at the time occupied or not, or any steamboat, canalboat, vessel, or other watercraft, or railroad car or any

yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be guilty of burglary in the second degree.

**6.**  The informations in both cases alleged that appellants "attempted to enter the premises ... of Central City Discount (David Shasho) with intent to steal the property of another...."

corporate status of the owner of the stereo store, they are entitled to a judgment of acquittal. We hold, to the contrary, that the government was obliged to prove only that the store was the property of someone other than the appellants. It did not have to prove that the owner was a corporation (if in fact it was); indeed, it did not have to prove precisely who the owner was, so long as the evidence established that appellants were not the owners.

In *Bord v. United States, supra,* the defendant was convicted of housebreaking (the statutory predecessor of burglary under our current Code) and larceny. The indictment charged that he entered "the building of the Stanley Company of America, a body corporate, said building being known as the Savoy Theater." On appeal he contended that the government had failed to prove the corporate status of the Stanley Company, in that there was "no proof either that the named Company was incorporated or that it occupied the theater." 76 U.S.App.D.C. at 206, 133 F.2d at 314. The court held, however, that the testimony of the assistant manager of the theater and a representative of Warner Brothers was sufficient to prove both facts "by 'reputation,' *i.e.,* by 'evidence tending to show that the corporation was de facto organized and acting as such.'" *Id.* (footnote omitted). The court went on to say, in language particularly relevant to this case:

> We do not suggest that failure to prove the identity and corporate character of the occupant would have called for reversal.... *Whoever occupied the Savoy Theater, it is obvious that appellant had no right to break and enter it or to remove property from it,* and it was sufficiently identified so that he cannot again be prosecuted for these offenses.

*Id.* (emphasis added).

Likewise, in *Cady v. United States, supra,* the court affirmed a conviction of burglarizing a garage when the indictment alleged that the garage was occupied by one person, but the evidence at trial revealed that this person and another were the actual occupants. In holding that this was not a material or substantial variance, the court observed that "[t]he purpose of the law in requiring the name of the [occupant] to be stated" was to negate the defendant's right to break and enter and to protect him from a second prosecution for the same offense. It then concluded:

> This purpose is sufficiently satisfied where, as in the present case, it is alleged and proved that *a person other than the defendant* occupied and used the garage when it was entered.

54 App.D.C. at 13, 293 F. at 832 (emphasis added).

Our analysis is supported by a series of recent cases in which we have affirmed convictions of shoplifting. Under our shoplifting statute, D.C.Code § 22–3813 (1989), which was added to the Code in 1982,[7] the government must prove that the defendant engaged in certain conduct with respect to "personal property of another that is offered for sale...." In *Carmon v. United States,* 498 A.2d 580 (D.C.1985), the defendant contended on appeal that the government had failed to prove exactly who owned the sweaters he was accused of taking. After summarizing the evidence, which included testimony from a store detective describing the defendant's conduct, we held that the trier of fact

> could reasonably find that the proprietor of the store, *whoever he, she, or it may have been,* was the owner of the sweaters and that appellant was not. It was not necessary to prove exactly who the owner of the sweaters was, but merely that the owner—*i.e.,* the person or persons entitled to exercise dominion and control over the property—was someone other than appellant. The combination of appellant's behavior (entering the store, removing the sweaters from the hangers, concealing them under his coat, and then leaving the store), the sales clerk's comment, which was admitted without objection, and the presence of

---

**7.** District of Columbia Theft and White Collar Crimes Act of 1982, D.C.Law 4–164, § 113, 29

D.C.Reg. 3976 (1982).

the price tags on the sweaters was sufficient to prove that the sweaters were the "property of another," which is all that the statute requires.

*Id.* at 582–583 (emphasis added; footnotes omitted). We reached a similar result in *Alston v. United States,* 509 A.2d 1129, 1131 (D.C.1986) ("it is not necessary for the government to prove exactly who the owner of the merchandise is, but only that the owner was someone other than the appellant" (footnote omitted)), and again in *Baldwin v. United States,* 521 A.2d 650 (D.C.1987) (evidence that defendant took rolled-up dresses with price tags on them, concealed them under his coat, and headed toward the exit was "sufficient to show that the dresses were the property of another").

Neither *Atkinson v. United States,* 322 A.2d 587 (D.C.1974), nor *Nelson v. United States,* 142 A.2d 604 (D.C.1958), supports appellant's argument. Although there is language in *Nelson,* quoted in *Atkinson,* which suggests that the corporate status of the owner of stolen property must be proved, the language from *Bord v. United States* quoted at page 775, *supra,* is plainly to the contrary, and more recent case law makes clear that *Atkinson* and *Nelson* imposed no such requirement. *See Wright v. United States,* 570 A.2d 731, 737 (D.C.1990).[8]

■ Guided by *Bord* and *Cady,* with an assist from *Carmon,* we readily conclude that the evidence in this case was sufficient to prove that the stereo store was owned by someone other than these appellants. Viewed in the light most favorable to the government, the evidence showed that appellants and their companions cased the store for over an hour, attempted to loosen the security grating at the front of the building, cut the telephone cables behind the building (thereby triggering the silent burglar alarm), broke the window at the front of the store, and walked quickly from the scene as the non-silent alarm began to sound. Furthermore, appellant Douglas was carrying a knapsack containing what could well be regarded as burglary tools, which he tried to discard as he fled from the police. Such conduct was sufficient to permit the jury to find that appellants were not the owners of the store and did not have a right to break and enter it in the middle of the night.

### B. *Intent to steal*

Appellants also contend that the government failed to prove that they had the requisite intent to steal, as charged in the informations, when they allegedly committed an attempted burglary of the stereo store. Their argument is totally without merit.

■ Specific intent in a burglary or attempted burglary case, unless admitted by the defendant, must usually be proved by circumstantial evidence or by some statement the defendant makes at the time of the offense. *See Massey v. United States,* 320 A.2d 296, 299 (D.C.1974); *United States v. Fox,* 140 U.S.App.D.C. 129, 131, 433 F.2d 1235, 1237 (1970); *Washington v. United States,* 105 U.S.App.D.C. 58, 61, 263 F.2d 742, 745, *cert. denied,* 359 U.S. 1002, 79 S.Ct. 1142, 3 L.Ed.2d 1032 (1959). In this case, we hold, the circumstantial evidence of intent was strong. The testimony showed that appellants cased a store which carried valuable stereo components. Equipped with assorted tools, they hovered in the vicinity of the store for over an hour, shook the security grate in the front, and finally broke the store window. When the alarm started to ring, they made a swift departure but were caught as they tried to flee. From these facts any reasonable factfinder could readily infer that appellants intended to steal merchandise from the store, and that they were frightened

---

8. In any event, neither *Atkinson* nor *Nelson* was a burglary case, which is what we are concerned with here. *Nelson,* in particular, was an appeal from a larceny conviction, and the law is now well established (as it apparently was not when *Nelson* was decided) that larceny is an offense against possession, not against ownership, so that ownership is irrelevant in a larceny prosecution. *See Moss v. United States,* 368 A.2d 1131, 1133 (D.C.1977); *Levin v. United States,* 119 U.S.App.D.C. 156, 159, 338 F.2d 265, 268 (1964), *cert. denied,* 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965).

away by the alarm before they had a chance to carry out that intent. We find no error.

*Affirmed.*