Jack BODRICK, Appellant,

v.

UNITED STATES, Appellee.

No. 01–CF–1120.

District of Columbia Court of Appeals.

Argued April 2, 2004.
Decided Feb. 16, 2006.

Thomas L. Dybdahl, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Michelle A. Zamarin, Assistant United States Attorney with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Thomas J. Tourish, Jr., Assistant United States Attorney, were on the brief, for appellee.

---

Before WASHINGTON, Chief Judge, REID, Associate Judge, and TERRY, Senior Judge.*

REID, Associate Judge.

After a jury trial, appellant Jack Bodrick was convicted of several crimes, including first-degree burglary (on July 26, 1996), in violation of D.C.Code § 22–1801(a) (1996);[1] mayhem (on June 20, 1996), in violation of § 22–506;[2] aggravated assault (on June 20, 1996), in violation of § 22–504;[3] and assault with a dangerous weapon (on June 20, 1996) (ADW), in violation of § 22–502.[4] He primarily challenges the sufficiency of the evidence as to the first-degree burglary charge on the ground that as a matter of law the government failed to sustain its burden of proving beyond a reasonable doubt the elements of the crime; and also contends that his convictions for mayhem and ADW merge with his conviction for aggravated assault. We hold that to prove the first element of first-degree burglary, the government need only establish that the complainant occupied and used the residential dwelling, even though the apartment was in the sole name of the appellant; and that the government met its burden of proof with respect to the other elements of the statute. We also hold that the offense of ADW does not merge with aggravated assault because "serious bodily injury" is an element of aggravated assault but not ADW, and the use of a weapon is an element of ADW, but not aggravated assault.

1. Recodified at D.C.Code § 22–801 (2001).

2. Recodified at § 22–406.

3. Recodified at § 22–404.

4. Recodified at § 22–402.

## FACTUAL SUMMARY

The government presented evidence showing that Theodora Bodrick resided in an apartment in the 600 block of 46th Street, in the Southeast quadrant of the District of Columbia, with her three children. Ms. Bodrick had occupied the apartment for ten years. She met Jack Bodrick in 1988, and married him on December 7, 1993. Ms. Bodrick testified that she and Mr. Bodrick "weren't even together for a good six months" before Mr. Bodrick departed and they separated. The lease to the apartment, however, remained in Mr. Bodrick's name.

On June 20, 1996, Mr. Bodrick "kicked the [apartment] door [open]" and entered "yelling [and] screaming." He followed Ms. Bodrick into the bathroom and "kicked [her] in [the] mouth and made [her] teeth bleed." Ms. Bodrick "ran in [her] daughter's room." Mr. Bodrick followed her "and tried to pull [her] out of the room," but she resisted. Ms. Bodrick's daughter witnessed the events in the bathroom and her room. Eventually Ms. Bodrick left her daughter's room and "ran outside." A call was made to the police and Officer Albert R. Lorraine "received a radio run for an assault in the 600 block of 46th Street, S.E." He saw Ms. Bodrick in front of the premises and she informed him "that she was assaulted by Mr. Bodrick." He went to the apartment and placed Mr. Bodrick under arrest. While Officer Lorraine was transporting Mr. Bodrick to the police station, Mr. Bodrick stated: "I'm gonna kill the b* * * * sooner or later." When Ms. Bodrick showed the officer her mouth where Mr. Bodrick had kicked her, Officer Lorraine observed that "her lower teeth were pushed back." The "next morning" after the incident Ms. Bodrick went to the dentist, and her teeth were pulled. Ms. Bodrick's dental treatment at the D.C. General Hospital was confirmed by government witness Aaron Dunmore, a medical records technician.

About a month later, on July 26, 1996, Ms. Bodrick was in the hallway of her apartment building when Mr. Bodrick approached and asked to enter her apartment, despite a "stay-away order" against him. When she told him no, and proceeded to enter the apartment from the hallway, Mr. Bodrick "came in behind [her]" by "push[ing] his way in." As she tried "to call the police, . . . he choked [her]." She managed to call the police. Officer John Hunt, responding to a radio assignment on the afternoon of July 26, 1996, encountered Ms. Bodrick outside her apartment building where she pointed at Mr. Bodrick, saying, "he's the one, he did it, he's the one." She explained that Mr. Bodrick "accused her of having another man in the apartment . . . ," and when she refused to let Mr. Bodrick go inside, "he kicked in the door, went [in with Ms. Bodrick following], [l]ooked around the apartment, looked back in the bedroom . . . and at one point he grabbed her, threw her down on the bed and started choking her."

## ANALYSIS

Mr. Bodrick contends that he "was the only legal lessee" of the apartment where Ms. Bodrick resided, and that while "an individual may commit an offense against co-owned property, he or she cannot do so against *solely* owned property." He maintains that a civil protection order obtained against him by Ms. Bodrick was defective since it listed no address or work place for Ms. Bodrick, and left blank the section of the CPO providing for the address of the residence that the respondent is required to vacate. In addition, he argues that "the evidence in this case did not establish that anyone was inside [the apartment] . . . when Mr. Bodrick entered it" on July 26, 1996; nor did it prove that Mr. Bodrick

entered the apartment with intent to assault Ms. Bodrick. And, he also claims that the instruction given to the jury regarding the CPO constituted plain error.

 The standard for reviewing the sufficiency of the evidence is a familiar one. "We must view all the evidence in the light most favorable to the government, keeping in mind the jury's right to assess credibility and to draw reasonable inferences from the evidence it has heard." *Nelson v. United States,* 601 A.2d 582, 593 (D.C.1991) (citations omitted). "We recognize no distinction between direct and circumstantial evidence." *Id.* (citation omitted). " 'It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury.' " *Id.* (quoting *Williams v. United States,* 357 A.2d 865, 867 (D.C.1976)).

The indictment against Mr. Bodrick charged first-degree burglary as follows: "On or about July 26, 1996, within the District of Columbia, Jack Bodrick entered the apartment of Theodora Bodrick, while a person was inside that apartment with intent to assault another." D.C.Code § 22–801(a) specifies that:

> (a) Whoever shall, either in the nighttime or in the daytime, break and enter, or enter without breaking, any dwelling, or room used as a sleeping apartment in any building, with intent to break and carry away any part thereof, or any fixture or other thing attached to or connected thereto or to commit any criminal offense, shall, if any person is in any part of such dwelling or sleeping apartment at the time of such breaking and entering, or entering without breaking, be guilty of burglary in the first degree. Burglary in the first degree shall be punished by imprisonment for

not less than 5 years nor more than 30 years.

The trial court properly instructed the jury that:

> [T]he essential elements of [first degree burglary] each of which the government must prove beyond a reasonable doubt are as follows. The first element is that the defendant broke and entered or entered without breaking a dwelling of another used as a sleeping apartment. The second element is that at the time of the entry any person was in any part of that dwelling. And then the third and final element of that offense is that at the time of the entry the Defendant had the specific intent to commit the assault.

This charge is consistent with CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.34 (4th ed. Revised 2002).

Relying on our decision in *Douglas v. United States,* 570 A.2d 772, 774 (D.C. 1990), Mr. Bodrick asserts that the government was required to prove that he entered "the property of another," and that it could not do so because he was the sole lessee of the apartment in which Ms. Bodrick resided. Unlike the case before us which concerns first-degree burglary and a residential dwelling place, *Douglas* involved a conviction for attempted second-degree burglary of a stereo store, and the issue was whether the government had "to prove, or even allege, the corporate status of the owner of the stereo store." *Id.* at 774–75 (footnote omitted). The information filed against the defendants in that case alleged that they "attempted to enter the premises ... of Central City Discount (David Shasho) with intent to steal the property of another ...." *Id.* at 775 n. 6. In the context of that case, we explained the first element of proof regarding first-degree burglary:

In a prosecution for burglary or attempted burglary in the District of Columbia, the government must prove that the building or other premises involved were the property of another. While such proof is not explicitly mandated by our burglary statute, the case law requires it in order to "negative the defendant's right to break and enter, and to protect him from a second prosecution for the same offense."

*Id.* at 774 (quoting *Cady v. United States,* 54 App. D.C. 10, 13, 293 F. 829, 832 (1923)) (other citation omitted). We examined *Cady* and said:

[T]he court affirmed a conviction of burglarizing a garage when the indictment alleged that the garage was occupied by one person, but the evidence at trial revealed that this person and another were the actual occupants. In holding that this was not a material or substantial variance, the court observed that "the purpose of the law in requiring the name of the [occupant] to be stated" was to negate the defendant's right to break and enter and to protect him from a second prosecution for the same offense. It then concluded:

This purpose is sufficiently satisfied where, as in the present case, it is alleged and proved that *a person other than the defendant occupied and used the garage when it was entered.* 54 App. D.C. at 13, 293 F. at 832 (emphasis added).

*Douglas,* 570 A.2d at 775. The emphasis in *Cady* was on "occupancy" and "use," not ownership, and is consistent with the statutory language of the first-degree burglary statutory provision. Thus, the indictment against Mr. Bodrick alleged, with respect to the first-degree burglary charge, that Mr. Bodrick "entered the apartment of Theodora Bodrick, while a person was inside that apartment with intent to assault another." Ms. Bodrick was the occupant and user of the apartment at the time Mr. Bodrick entered. And, he entered her apartment on July 26, 1996, even though a civil protection order against him was in effect.

As to the first element of the first-degree burglary statute, we hold that, despite Mr. Bodrick's status as "legal lessee," the government needed to establish only that Ms. Bodrick occupied and used the residential dwelling in the 600 block of 46th Street, S.E. This reading of the statute not only is consistent with *Douglas* and *Cady, supra,* but it is also in harmony with other jurisdictions' interpretation of their first-degree burglary statutes. The Supreme Court of North Carolina interpreted its burglary statute, as it related to "a dwelling house or sleeping apartment of another" to mean occupancy or possession, not ownership:

The defendant's emphasis on the issue of ownership of the dwelling house here is misplaced. We have stated that the reason for prohibiting the offense of first degree burglary "is to protect the habitation of men [or women], where they repose and sleep, from meditated harm." We have also held that in burglary cases occupation or possession of a dwelling is equivalent to ownership, and actual ownership of the premises need not be proved. [Our] holdings recognize that the inquiry relevant to this element of the crime is whether the premises is the *dwelling* of another, not whether it is *owned* by another. The trial court was not required to give any instruction concerning the ownership of the house, as the concept of title is not controlling in ascertaining whether the offense has been committed.

*North Carolina v. Harold,* 312 N.C. 787, 325 S.E.2d 219, 222 (1985) (emphasis in original) (citations omitted). Similarly, in

*Pennsylvania v. Majeed,* 548 Pa. 48, 694 A.2d 336 (1997), the appellant argued that he could not be found guilty of burglary because he was "the exclusive owner of the home." *Id.* at 337. The Supreme Court of Pennsylvania rejected his argument and, like the Supreme Court of North Carolina, noted that "[t]he historical principle underlying the law of burglary is the protection of the right of *habitation.*" *Id.* at 338 n. 2 (citing 4 William Blackstone, Commentaries 223). A Protection from Abuse Order was in effect against the appellant. The court declared that appellant's wife and children "were entitled to the exclusive right of possession against the [a]ppellant," and that "his license or privilege to enter the premises had expired." *Id.* at 338. The appellant in *Turner v. Virginia,* 33 Va.App. 88, 531 S.E.2d 619 (2000), argued that he could not be guilty of burglary because he and his wife jointly owned the property he was accused of breaking and entering. Because of an assault and battery conviction against him, relating to his wife, the appellant was under court order to have no contact with her. The court determined that the appellant's "proprietary interest was relegated to [his] wife's superior possessory interest and right to exclusive habitation." *Id.* at 622. Similarly, here, Mr. Bodrick was under a court order to "stay away" from Ms. Bodrick's home and place of employment and not to come within 100 feet of her. Thus, not only did Ms. Bodrick have occupancy

and exclusive use of the apartment in the 600 block of 46th Street, S.E., but Mr. Bodrick's interest as leaseholder was subordinate to her occupancy and use.[5]

█ We are unpersuaded by Mr. Bodrick's arguments that the government failed to prove the second and third elements of the first-degree burglary offense, that at the time of his entry into Ms. Bodrick's abode, "any person was in any part of that dwelling," and that at the time of entry Mr. Bodrick had the specific intent to assault Ms. Bodrick. Ms. Bodrick testified at trial that on July 26, 1996, that she entered her apartment from the hallway, and Mr. Bodrick "came in behind [her]" by "push[ing] his way in." Hence, she was inside the apartment when Mr. Bodrick entered.[6] Under our interpretation of the intent element of the burglary statute, the record belies Mr. Bodrick's assertion that the government failed to prove he intended to assault Ms. Bodrick when he entered the apartment. The government had to establish that when he entered Ms. Bodrick's apartment, Mr. Bodrick had "already formed the intent to commit a criminal offense inside." *Nelson, supra,* 601 A.2d at 594; *see also Lee v. United States,* 699 A.2d 373, 383 (D.C. 1997). "[T]he fact that appellant actually committed an assault very soon after he was inside the house is strong circumstantial evidence that he intended to commit an assault at the time he entered." *Bowman*

---

5. Mr. Bodrick claims that the civil protection order against him was defective, but he did not appeal from that order and hence has waived that contention. He also argues that the trial court improperly instructed the jury that: "If you find that there was a Civil Protection Order directing the Defendant to stay away from the complaining witness, Theodora Bodrick, in her home, then you may decide that on July 26th, that [the apartment in which Ms. Bodrick resided] was the dwelling of another." The judge also indicated that "such orders are valid." This instruction was

not error, let alone plain error. *See United States v. Olano,* 507 U.S. 725, 732–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Majeed, supra; Turner, supra.*

6. Officer Hunt testified that Ms. Bodrick told him that Ms. Bodrick followed Mr. Bodrick into the apartment after he kicked the door in, but the jurors could credit the testimony of Ms. Bodrick that she went into the apartment in front of Mr. Bodrick.

v. *United States*, 652 A.2d 64, 68 (D.C. 1994). Mr. Bodrick committed an assault upon pushing his way into the apartment, and reasonable jurors could infer that he did so with an intent to assault Ms. Bodrick.

■ Finally, Mr. Bodrick maintains that certain of his convictions merge. The government agrees that the mayhem conviction merges with the aggravated assault conviction. We held in *Nixon v. United States*, 730 A.2d 145, 152 (D.C.1999) that the crime of mayhem merges with an aggravated assault offense. Mr. Bodrick claims that the assault with a dangerous weapon (ADW) conviction also merges with aggravated assault. We held in *Gathy v. United States*, 754 A.2d 912 (D.C. 2000) "that ADW is a lesser included offense of aggravated assault while armed." *Id.* at 919. And, we concluded in *Frye v. United States*, 2005 WL 2665432, —— A.2d ——, Nos. 02–CF–1233, 03–CO–430, and 03–CO–1492 (D.C. October 14, 2005) that the crimes of ADW and attempted aggravated assault while armed merge because "[s]erious bodily injury, the only element distinguishing ADW from [attempted aggravated assault while armed], is not required to prove [attempted aggravated assault while armed]." —— A.2d at ——, 2005 WL 2665432, at *10. Since "serious bodily injury" is an element of aggravated assault, but not ADW, and since the use of a weapon is an element of ADW, but not aggravated assault, we hold that these offenses do not merge. *See Byrd v. United States*, 598 A.2d 386, 389 (D.C.1991) (en banc); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court, but remand the case, with instructions to vacate either the mayhem or the aggravated assault conviction.

*So ordered.*