**Daniel James SPRIGGS, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 10–CF–1319, 11–CO–1006.**

District of Columbia Court of Appeals.

Argued June 13, 2012.

Decided Sept. 20, 2012.

Sicilia C. Englert, appointed by this court, for appellant.

Erik M. Kenerson, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and Chrisellen R. Kolb and Bridget M. Fitzpatrick, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BECKWITH, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

In this appeal, we principally address the question whether a person can be convicted of aiding and abetting in the burglary of a home in which he or she dwells by supporting a third person's entry to commit a criminal offense against another person who also dwells in the premises. We answer the question yes and affirm the burglary conviction.

## I.

In August of 2009, appellant asked Kai Morgan, an acquaintance, whether any one-bedroom apartments were available to rent. Appellant explained that he had no place to stay and that he was desperate to find a place for himself and his girlfriend, who was about to give birth. Mr. Morgan offered to allow appellant "to spend a couple of weeks in [his] apartment," but imposed a number of conditions upon appellant's stay, including "ma[king] him commit to basically a shoulder bag and some things, [and] immediate things for their own living situation because it was a small apartment." According to his testimony, Mr. Morgan told appellant "that it would not be a long [stay]—you're a guest. You're going to only be a guest. You're not moving in," and appellant agreed to stay in the apartment only until his girlfriend gave birth. Mr. Morgan allowed them to stay in his bedroom while he slept on the living room couch. Mr. Morgan told appellant that if he needed to stay longer than two to three weeks, they could discuss a new agreement later. In return for allowing him to stay in his apartment, appellant gave Mr. Morgan between $80 and $100. Appellant and Mr. Morgan did not sign a written agreement.

The relationship between appellant and Mr. Morgan soured because Mr. Morgan complained that appellant came home late, was being loud, and was smoking weed in the home. Around the 19th or 20th of August, Mr. Morgan asked appellant to make preparations to leave. After appellant failed to make any preparations to leave over the next few days, Mr. Morgan began to destroy things in the apartment, such as the microwave, television, and curtains, in order to prevent appellant from using them. On or around September 14, 2009, Mr. Morgan told appellant that he was going out for a drink, and that when he returned, he wanted to see appellant packing. When Mr. Morgan returned home, a police officer placed him under arrest because "[appellant] accused [him] of pulling a knife on [appellant] while he was holding his baby." Mr. Morgan was charged with assaulting appellant and was released on September 21, 2009.

Upon release, Mr. Morgan returned home and discovered that appellant was still living there with his girlfriend and her new-born child, and that he had moved more of his belongings into the home. Mr. Morgan called the police to remove appellant from the home, but the police refused to do so, stating that appellant was a lessee. Mr. Morgan called the police a second time, but the police said that they would not remove appellant and threatened not to return if Mr. Morgan called again. Mr. Morgan then called the police a third time to disrupt appellant's sale of alcohol and cigarettes from the apartment, which appellant had been doing to support himself. The police arrived, but, in accordance with their threat, they drove away when they saw that it was Mr. Morgan who had called.

At around 1:00 a.m. to 2:00 a.m. on September 22, 2009, Mr. Morgan returned to his home after running an errand. On his way into the home, Mr. Morgan saw appellant, Nathaniel Roberts, and appellant's brother, Nathaniel Spriggs, as well as two or three other people standing near his driveway. Mr. Morgan passed the group, went into his home, closed the door, pulled down a sheet covering the window to let light into the apartment, and went to sleep on the living room couch.

According to Mr. Morgan's testimony, later that night, a projectile hit one of the living room walls, causing him to jump up. A second unknown object then struck Mr. Morgan in the head, and when he looked up, he saw that Nathaniel Roberts had

thrown it. Mr. Morgan attempted to run out of the apartment, but appellant blocked the door with his arm, and Mr. Roberts pulled him back into the room. Mr. Morgan testified that as Mr. Roberts struck him from behind, appellant punched him from the front. Mr. Morgan also claims that appellant struck him with an iron pipe and then threw him onto a glass table, shattering it. While he was on the ground, appellant threw a bicycle on him, and then Mr. Roberts threw the same bicycle on him a second time. Mr. Morgan testified that a third person was also present, beating and kicking him. When Mr. Roberts and the third person then left the apartment, Mr. Morgan fled.

Appellant gave a videotaped statement to the police which told a somewhat different story. The group that Mr. Morgan saw outside his home included alleged drug dealers who told appellant that they wanted to harm Mr. Morgan because he was "making the strip hot" by repeatedly calling the police. Appellant admitted telling them, "Yeah, fuck him up. You want to fuck him up, fuck him up. Please do. He ain't even lock the door." Appellant later told the police that he said to the alleged drug dealers,

> Nah, nah, nah, nah, don't hit him in the head with that motherfucker. Matter of fact, me and my brother took the goddamn—because he was going to use the fucking club, you know, the club, one of them clubs. I said, nah, don't hit the motherfucker man, I don't want him killed. I want his ass, you can whoop his ass, but don't fucking kill this man. Don't hit him in the fucking head, just don't hit him in the fucking head.

He also claims that he entered the apartment with Mr. Morgan's assailants solely to guard his bedroom door so that Mr. Morgan would not run into his bedroom, where the baby and the baby's mother were still staying, during the attack.

Appellant stated that, during the attack,

> the only time I put my hands on this motherfucker is when he ran to the door. I'm standing in the dark. He ran to the door, over to our bedroom door, trying to get in, screaming and shit, they fucking him up. I pushed—man get the fuck away from my fucking door. He ain't running in here because he was trying to get away from them. They was tearing—it was pitch black. So they trying to tear his ass up. I was like, fuck it, do him.

Although appellant said it was "pitch black," he also saw that Mr. Morgan "pick[ed] the bike up and threw it—because he snatched all the curtains down, so you could see like the, you could see in there, you could see right in there, but it was dark." Appellant explained that the glass table broke because Mr. Morgan threw the bike. When Mr. Morgan came at him one more time, appellant pushed him away, and Mr. Morgan ran out of the apartment.

That night, police officers responded to a call at a gas station one block from Mr. Morgan's home. Officers found Mr. Morgan at the gas station and called for medical assistance because he appeared to be in great pain. Mr. Morgan was taken to a hospital where he received fifteen to twenty stitches, primarily on his head, to close wounds. He was hospitalized for more than thirty days. At the time of the trial, Mr. Morgan retained a number of visible scars.

Based upon the above-stated evidence, the government charged appellant with first-degree burglary, D.C.Code § 22–801(a) (2001); assault with significant bodily injury ("felony assault"), D.C.Code § 22–404(a)(2) (2001); and two counts of assault with a dangerous weapon ("ADW")

for use of an unknown object and a bicycle, D.C.Code § 22–402 (2001).[1]

Appellant moved for a judgment of acquittal ("MJOA") with respect to his burglary charge. Appellant's counsel argued that the evidence showed that "my client had a right to be there [in the home], he basically had a lease, an unsigned lease to be there." The trial judge eventually made the following ruling:

I am denying the MJOA with respect to the burglary for your client. I think there's evidence from which the jury could conclude beyond a reasonable doubt that he was not, he did not have a right to use or occupancy of the property at the time of the alleged burglary. In addition, there is an aiding and abetting theory by which if Mr. Roberts entered, if Mr. Spriggs aided and abetted Mr. Roberts and Mr. Roberts entered with the intention to commit the assault, then your client, Mr. Spriggs, would be guilty under an aiding and abetting theory. For both of those reasons I'm denying the motion for judgment of acquittal.

The trial judge then provided the jury with instructions for their deliberation. With respect to the burglary count, the trial judge informed the jury that to convict appellant they must find that he "entered the dwelling of another." *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.101 (5th ed.2009). The trial judge explained,

A dwelling is a dwelling of another, if the person entering did not have a right to use or occupancy.... It is for you to decide whether the government has

proven beyond a reasonable doubt that under the arrangement between Mr. Spriggs and Mr. Morgan, Mr. Spriggs did not have the right to use or occupancy of the property at the time of the alleged burglary.

No objection was made to this instruction. The jury found appellant guilty of first-degree burglary, felony assault, and two counts of ADW.

## II.

The offense of burglary is defined, in relevant part, as follows:

Whoever shall, either in the nighttime or in the daytime, break and enter, or enter without breaking, any dwelling ... with intent ... to commit any criminal offense, shall, if any person is in any part of such dwelling ... at the time of such breaking and entering, or entering without breaking, be guilty of burglary in the first degree.

D.C.Code § 22–801(a). Although the burglary statute does not state that the dwelling must be "of another," "the case law requires it in order to 'negative the defendant's right to break and enter, and to protect him from a second prosecution for the same offense.' " *Douglas v. United States,* 570 A.2d 772, 774 (D.C.1990) (quoting *Cady v. United States,* 54 App. D.C. 10, 13, 293 F. 829, 832 (1923)).

Appellant's principal argument on appeal is that the trial judge erred in denying his MJOA for the first-degree burglary charge because the evidence in his view was undisputed that, at the time of the offense, he was using and occupying Mr.

---

1. Nathaniel Roberts was also charged with the same counts, as well as one count of escape, D.C.Code § 22–2601(a)(1) (2001), and two counts of obstruction of justice, D.C.Code § 22–722 (2001), which are not relevant to this appeal. Mr. Roberts pled guilty to the escape count. At trial, Mr. Roberts attacked the validity of the identification by Mr. Morgan, an admitted cocaine addict at the time, and stressed the lack of any corroborating evidence or proof of any motive to attack Mr. Morgan. The jury acquitted him of all other charges.

Morgan's apartment as his dwelling and thus the apartment was not the dwelling "of another" as required for a conviction of burglary. In short, he says you cannot burglarize your own home under any circumstance. The government responds, in accordance with the instruction given by the court, that Mr. Morgan's apartment was not appellant's dwelling because he was not "a lawful occupant" and "appellant had no right to occupy it." Appellant replies that the government focuses erroneously upon Mr. Morgan's and appellant's property rights whereas the correct test should be whether appellant factually used and occupied the home as his place of abode. We do not need to resolve this issue of legal right to occupancy versus factual occupancy. We simply assume for purpose of this appeal that appellant both legally[2] and factually occupied and used the apartment as his dwelling. Nevertheless, we conclude, contrary to the assertion of appellant, that even if one cannot be guilty of burglarizing his own home when acting alone, one can be guilty of aiding and abetting the burglary of his dwelling by another; we further conclude that the evidence here clearly supports such a conviction and that reversal is not warranted in the circumstances of this case.

### A.

We address first the standard of review. Although appellant frames his argument as one challenging the refusal to grant the MJOA, his argument in essence challenges the correctness of the jury instruction giv-

en by the trial court, which adopted the "legal right to occupy" approach and to which he interposed no objection. Thus, normally, we would review for plain error pursuant to the familiar standard of *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Since the evidence supports his conviction for aiding and abetting the burglary, he plainly cannot show the "manifest injustice" that is a requisite for plain error reversal. *See Downing v. United States*, 929 A.2d 848, 858 (D.C.2007). That could be the end of this appeal.

However, we have on occasion engaged in *de novo* review of a conviction where the conduct of a defendant is challenged as entirely falling outside the scope of the offense for which he was convicted. *See Wynn v. United States*, 48 A.3d 181 (D.C. 2012). If we assume here that appellant's argument is correct to the extent that he could not be guilty as a principal for burglarizing his own home,[3] we are faced with the principle that if one of two grounds presented to a jury is legally insufficient, the conviction cannot be sustained on the theory that the evidence was sufficient to support at least one of the grounds. *See Coghill v. United States*, 982 A.2d 802, 808 (D.C.2009). In such a situation, the concern is that the jury may have convicted the defendant solely on the legally erroneous ground and thus the conviction must be reversed. *Id.* But no such concern is presented in the case before us. As the Supreme Court recently made clear, harmlessness analysis is applicable in this pre-

---

2. This may not be a completely baseless assumption. The law relating to occupancy and the procedures required to resolve disputes is complicated with respect to trespassers, guests, roomers, lodgers, licensees, and true tenants, including holdover tenants. As the police recognized, appellant's rights, or lack thereof, were not totally clear-cut, and Mr. Morgan's testimony itself lacked some clarity. For this reason, we have tended to focus on

the issue of actual " 'occupancy' and 'use' " as a test for burglary as in *Bodrick v. United States*, 892 A.2d 1116, 1120–21 (D.C.2006), a case relied on by appellant for his position.

3. We need not address this issue. *Cf. People v. Gauze*, 15 Cal.3d 709, 125 Cal.Rptr. 773, 542 P.2d 1365, 1367 (1975) (defendant who entered own home and shot roommate could not be convicted of burglary).

cise situation. *Skilling v. United States,* —— U.S. ——, 130 S.Ct. 2896, 2934, 177 L.Ed.2d 619 (2010) (citing *Hedgpeth v. Pulido,* 555 U.S. 57, 58, 129 S.Ct. 530, 172 L.Ed.2d 388 (2008)). Here, the burglary case as submitted to the jury rested both on a theory that appellant acted as a principal and on the alternate theory that appellant aided and abetted the burglary by another. As we shall show, even if we engage in *de novo* review on the assumptions stated above, a harmlessness analysis precludes reversal here.

**B.**

■ We turn then to examine the question whether a person who legally and factually occupies and uses a residence as his dwelling may, nonetheless, be liable for aiding and abetting another in burglarizing the dwelling. We begin by taking note of the common law purpose of the burglary offense. "[T]he reason for prohibiting the offense of first degree burglary is to protect the habitation of men or women, where they repose and sleep, from meditated harm." *Bodrick v. United States,* 892 A.2d 1116, 1120 (D.C.2006) (quoting *North Carolina v. Harold,* 312 N.C. 787, 325 S.E.2d 219, 222 (1985)) (brackets and internal quotation marks omitted). Burglary was, "at common law, primarily an offense against the security of another's habitation, and that is still the general conception of it." *Turner v. Commonwealth,* 33 Va.App. 88, 531 S.E.2d 619, 621 (2000) (brackets and internal quotation marks omitted). *See also McKenzie v. State,* 407 Md. 120, 962 A.2d 998, 1002 (2008) ("Common law burglary and, by extension, Maryland's statutes prohibiting burglary of the 'dwelling of another,' are crimes against habitation."). In other words, burglary "protect[s] the dweller or occupier from intruders," *State v. Altamirano,* 166 Ariz. 432, 803 P.2d 425, 428 (Ariz.Ct.App.1990), and helps "to secure the sanctity of one's home, especially at

nighttime when peace, solitude, and safety are most desired and expected," *State v. Singley,* 383 S.C. 441, 679 S.E.2d 538, 540 (S.C.Ct.App.2009) (brackets and internal quotation marks omitted). "[A]t the heart of burglary law is protection of the individual and family from unlawful intrusion while home[.]" *Id.* (internal quotation marks omitted).

But this is not the typical burglary case involving a foreign intruder as the defendant. In the past, we have stated that the government must show that a person other than the accused occupied or used the home to prove that it was the "dwelling of another." *See Bodrick,* 892 A.2d at 1120. We also held that even where the government fails to properly identify the occupant of the dwelling, a conviction will lie if "it is alleged and proved that a person other than the defendant occupied and used the [dwelling] when it was entered." *Cady,* 54 App.D.C. at 13, 293 F. at 832. *See also Douglas,* 570 A.2d at 775 ("[The government] did not have to prove precisely who the owner was, so long as the evidence established that appellants were not the owners."). Unlike *Bodrick, Cady,* or *Douglas,* however, here, under our assumption, appellant was a lawful, factual co-occupant with Mr. Morgan. In that sense, the home was literally the "dwelling of another," *i.e.,* Mr. Morgan, but it was also the dwelling of appellant.

Although Mr. Morgan's apartment may have been appellant's dwelling, the undisputed evidence showed that two people other than appellant entered the home and attacked Mr. Morgan. Even if appellant could not be convicted of burglarizing his own home acting alone, we perceive no logical reason—and none has been given to us—why a person cannot aid and abet an offense for which he could not be convicted if committed by him personally. In the era in which a husband could not legally

rape his wife, there was "universal acceptance of the rule that a husband can be charged as a principal with the crime of rape or assault to commit rape on his wife where he acted as a procurer or accomplice in arranging or permitting such a sexual attack to be perpetrated upon his wife by a third person." *Criminal Responsibility of Husband for Rape, or Assault to Commit Rape, on Wife*, 24 A.L.R.4th 105, 122, 129 (1983) (citing numerous cases recognizing that "a husband may be guilty of the rape of, or assault with intent to rape, his wife if he aids and abets, or procures, another to have sexual intercourse with his wife."). *See also United States v. Lester*, 363 F.2d 68, 73 (6th Cir.1966) ("the accused may be convicted as causer, even though not legally capable of personally committing the act forbidden"); *Haggerty v. United States*, 5 F.2d 224, 225 (7th Cir.1925) ("even though he may have been incapable of committing the crime … he was not incapable of aiding and abetting another in the commission of the crime.").

Addressing the factual situation presented here, we hold that a person may, as a matter of law, be convicted of aiding and abetting in the burglary of the home where he dwells where the crime intended to be committed in the home infringes upon the peaceful use and occupancy of a co-dweller of that home. Here, the government alleged that appellant aided and abetted Mr. Roberts and another unidentified person in entering the apartment to commit an assault on Mr. Morgan. Such an assault, committed by a total outsider, violates the core interests that the offense of burglary is designed to protect: "the habitation of men or women, where they repose and sleep, from meditated harm," *Bodrick*, 892 A.2d at 1120 (brackets and internal quotation marks omitted), and the security of "the dweller or occupier from intruders," *Altamirano*, 803 P.2d at 428.

Our holding is consistent with those of other jurisdictions where a defendant-occupant authorized the entry of a third party into the dwelling to assault a co-occupant. In *State v. Ortiz*, the defendant provided a hit-man with keys to his home so that the hit-man could enter the home to kill his wife. 701 So.2d 922, 931 (La. 1997). The defendant was charged with first-degree murder committed in the course of an aggravated burglary. *Id.* Under Louisiana law, in order to prove that an aggravated burglary occurred, the government needed to show an "unauthorized entry," but the only evidence offered at trial "suggested that defendant himself had lawful access to the premises." *Id.* The Louisiana Supreme Court upheld the defendant's conviction because the hit-man did not have authorized entry despite being given the defendant's permission to enter the home because "even if a person has lawful access to enter a premises himself, he is *not* empowered to grant lawful authority to enter for the purpose of committing a felony." *Id.* at 931–32.

In *Davis v. State*, the defendant entered his home with Lawrence Brown, and together they raped the defendant's wife. 611 So.2d 906, 908–09 (Miss.1992). The defendant was charged with being an accessory to burglary by aiding Mr. Brown's entry into the home. *Id.* at 910. The defendant argued that, as co-owner of the home, he could consent to Mr. Brown's entry, "and therefore Brown's entry was not burglarious," and he could not be found guilty as an accessory. *Id.* at 911. The Mississippi Supreme Court rejected this defense noting that "it was the person against whom the crime was directed who was important" and holding that, "[w]hile Davis had the authority to consent to Brown's entry into the trailer for a lawful purpose, by no stretch of reasoning could he ever be considered as having a right to authorize Brown's entry to rob and rape Mrs. Davis." *Id.* at 911–12. We join the

courts in *Ortiz* and *Davis* in our holding in this appeal.

### C.

 "In general, to prove aiding and abetting the government must show that (1) a crime was committed by someone; (2) the accused assisted or participated in its commission, and (3) the accused participated with guilty knowledge." *English v. United States*, 25 A.3d 46, 52 (D.C.2011). In particular, the government must establish "that appellant had the specific *mens rea* to commit [the] crime[ ] . . . ." *Paige v. United States*, 25 A.3d 74, 88 (D.C.2011) (citing *Wilson–Bey v. United States*, 903 A.2d 818, 836, 843 (D.C.2006) (en banc)). In the context of burglary, the evidence must also show that the defendant intended to commit a "particular offense" upon entry into the dwelling. *See United States v. Thomas*, 144 U.S.App.D.C. 44, 47, 444 F.2d 919, 922 (1971). Thus, to prove aiding and abetting in this case, the government must establish that appellant assisted or participated in the burglary with the specific intent that the offense planned by the principals be committed within the property, or in other words, also intended that an assault be committed on Mr. Morgan inside his home.[4]

By convicting appellant on all four counts, the jury necessarily rejected his defense of innocent presence. The evidence of appellant's aiding and abetting then became overwhelming. First, appel-lant did not dispute that a burglary "was committed by someone," *English*, 25 A.3d at 52, because even according to his own witness and his recorded statement to the police, two individuals other than himself entered Mr. Morgan's home and attacked him.[5] Second, appellant clearly "assisted or participated in its commission," *id.*, because by his own admission he encouraged the attack upon Mr. Morgan by telling the group, "Yeah, fuck him up. You want to fuck him up, fuck him up. Please do. He ain't even lock the door." *See (David) Johnson v. United States*, 883 A.2d 135, 142 (D.C.2005) (jury could reasonably find appellant aided and abetted by giving "tacit approval" of the perpetrated offenses). Appellant also admitted shoving Mr. Morgan away from his door during the brawl. Finally, appellant had "guilty knowledge," *English*, 25 A.3d at 52, and intended that an assault be committed on Mr. Morgan because, again by his own admission, he told the assailants that Mr. Morgan did not keep the door to his home locked, thereby expressing his wish that the assailants enter the apartment, and he told the assailants to "fuck him up," thereby expressing his desire that an assault be committed inside the home.

### D.

Finally, we address the issue of harmlessness, which we must face if we engage in *de novo* review and assume that appellant could not be convicted as a principal

---

4. Although the government's theory of the case was that two ADWs and a felony assault occurred inside the home, a person commits burglary if entering a dwelling "to commit *any* criminal offense." D.C.Code § 22–801(a) (emphasis added). Here, in the indictment, the government used simple assault as the offense intended inside Mr. Morgan's home. Therefore, to find that appellant aided and abetted in burglary, we need only determine whether the evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that appellant assisted someone in en-tering Mr. Morgan's home with the intent that an assault be committed within.

5. Since a third individual besides appellant and Mr. Roberts was involved, we need not address the possible effect of the acquittal of Mr. Roberts. See *supra* footnote 1. *See also Howard v. United States*, 656 A.2d 1106, 1119 (D.C.1995) ("the acquittal of a principal does not preclude conviction of an aider and abettor" (quoting *Morriss v. United States*, 554 A.2d 784, 790 (D.C.1989))).

for burglarizing his own home. The jury was presented with two grounds on which appellant could be convicted of burglary, either as a principal or as an aider and abettor. Because the theory of principal liability may have been legally erroneous, under *de novo* review, we must engage in harmlessness review to negate the possibility that the verdict rested upon an improper theory. *Hedgpeth v. Pulido*, 555 U.S. 57, 58, 129 S.Ct. 530, 172 L.Ed.2d 388 (2008).

"[T]here are two ways to prove the harmlessness of an alternative-theory error." *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir.2011), *on remand from* — U.S. ——, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). *See also United States v. Ferguson*, 676 F.3d 260, 277 (2nd Cir.2011) (listing same two ways that harmlessness can be found). First, the court "after a thorough examination of the record, is able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent error." *Skilling*, 638 F.3d at 482 (internal quotation marks omitted). Second, "the jury, in convicting on an invalid theory of guilt, necessarily found facts establishing guilt on a valid theory." *Id.* Here, any error was harmless under both grounds.

The record is clear that even absent the alleged error regarding the definition of a dwelling "of another," the result would have been the same. As discussed above, the evidence of appellant's guilt under an aiding and abetting theory was overwhelming. By appellant's own admission, at least two people attacked Mr. Morgan inside the apartment and appellant encouraged the people to attack Mr. Morgan

inside the home and shoved Mr. Morgan during the fight. Thus, even if the jury had been properly instructed with respect to principal liability, we conclude beyond a reasonable doubt that the jury verdict would have been the same under an aiding and abetting theory.

Moreover, even if the jury had convicted appellant based upon the allegedly improper principal theory, the jury "necessarily found facts establishing guilt" under the valid aiding and abetting theory. *Id.* Assuming that the jury relied upon the allegedly erroneous instruction defining the "dwelling of another," any error was harmless because appellant never disputed that other persons had entered the home and assaulted Mr. Morgan; wherever these other assailants lived, Mr. Morgan's home was clearly not their dwelling. Thus, the "dwelling of another" element, at least with respect to the aiding and abetting theory, was undoubtedly established. The only other element of burglary that appellant disputed was his intent to commit an assault on Mr. Morgan; while admitting his presence during the assault, appellant claimed he was there only to secure his bedroom door to prevent the fight from extending into his area of the home. However, as already noted, in convicting appellant of felony assault and ADW, the jury rejected appellant's defense. Even if the jury convicted appellant of burglary based upon principal liability, the jury by its verdict necessarily found that appellant had the intent requisite for aiding and abetting as well. Any error that occurred as a result of the allegedly erroneous definition of the "dwelling of another" element was clearly harmless.[6]

---

6. Appellant also argues that the trial court erred in refusing to give a lesser-included offense instruction on simple assault for the two ADW charges, as it did for the felony assault charge, because he allegedly disclaimed the use of a weapon in his statement to police. That error, if error at all, was harmless because we conclude "with fair assurance ... that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *See also Mitchell*

The judgment appealed from is accordingly,

*Affirmed.*

*v. United States,* 595 A.2d 1010, 1012 (D.C. 1991). Mr. Morgan's wounds, requiring a month's hospitalization with fifteen to twenty stitches, almost certainly were inflicted by weapons, not bare hands. Appellant's conviction of felonious assault, rejecting simple assault, indicated the jury's crediting of Mr. Morgan's version of events. And appellant's statement to police allegedly disclaiming use of a club in the assault is at best extremely ambiguous.